UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
RACHEL BURNS, ALLISON GERMAN, AMBER
HAWTHORNE LASHWAY, MARIE NEPTUNE, SUSAN
DEVLIN-VARLIN & KIMBERLY WESLEY, on their own         5:24-CV-1132 (BKS/ML)
behalves and on behalf of all similarly situated Nurse
Practitioners employed by the State of New York,       Assigned to the Honorable
                                                       Brenda K. Sannes,
    Plaintiffs,                    Chief U.S. District Judge

vs.

STATE OF NEW YORK, NEW YORK STATE CIVIL
SERVICE COMMISSION,

    Defendants.
-----------------------------------------------------------------x

# PLAINTIFFS' MEMORANDUM OF LAW
# IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

            Michael H. Sussman, Esq. [103324]
            *Attorney for Plaintiffs*
            Sussman & Goldman
            1 Railroad Avenue, Suite 3
            P.O. Box 1005
            Goshen, New York 10924
            (845) 294-3991 [Tel]
            (845) 294-1623 [Fax]
            Sussman1@sussman.law

            Dated: December 10, 2024

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES......................................................................................................*iii*

PRELIMINARY STATEMENT..................................................................................................1

STATEMENT OF FACTS...........................................................................................................1

STANDARD OF REVIEW..........................................................................................................3

ARGUMENT................................................................................................................................4

**POINT I        TITLE VII COVERS BOTH NAMED DEFENDANTS**.......................................4

**POINT II       DEFENDANT DEPARTMENT OF CIVIL SERVICE'S DELEGATED AUTHORITY OVER CORE DUTIES AFFECTING PLAINTIFFS' EMPLOYMENT CREATES LIABILITY UNDER THIRD-PARTY INTERFERENCE THEORY**...............................................................................9

CONCLUSION...........................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Alameda v. Ass'n. of Social Work Bds.*,
    2024 U.S. Dist. LEXIS 175886 (S.D.N.Y. Sep. 25, 2024, No. 23-CV-6156 [KMK]).....10, 11

*Arculeo v. On-Site Sales & Mktg.*,
    L.L.C., 425 F.3d 193 (2d Cir. 2005)..................................................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).........................................................................................................3, 4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................................3

*Felder v. United States Tennis Ass'n.*,
    27 F.4th 834 (2d Cir. 2022)................................................................................................8

*Gill v. Monroe County Dept. of Social Servs.*,
    79 F.R.D. 316 (W.D.N.Y. 1978).........................................................................................7

*Gulino v. NY State Educ. Dept.*,
    460 F.3d 361 (2d Cir. 2006)............................................................................................8, 9

*Jaufman v. Levine*,
    2007 U.S. Dist. LEXIS 72883 (N.D.N.Y. Sep. 28, 2007, No. 1:06-CV-1295 (NAM/DRH))...3

*Selevan v. New York Thruway Authority*,
    584 F.3d 82 (2d Cir. 2009).................................................................................................3

*Shiflett v. Scores Holding Co.*,
    601 F. App'x 28 (2d Cir. 2015)..........................................................................................8

*Sibley Mem. Hosp. v. Wilson*,
    488 F.2d 1338, 1341 (D.C. Cir. 1973 (1973)..................................................................5, 9

*Singleton v. Fifth Generation, Inc.*,
    2016 U.S. Dist. LEXIS 14000 (N.D.N.Y. Jan. 12, 2016, No. 5:15-CV-474 [BKS/TWD]).....10

*Spirt v. Teachers Ins. & Annuity Ass'n.*,
    691 F.2d 1054 (2d Cir. 1982)....................................................................................7, 8, 9

*Vanguard Justice Socy. v. Hughes*,
    471 F. Supp. 670 (D. Md. 1979).........................................................................................7

**Statutes**

42 U.S.C. § 2000e(b) .......................................................................................................... 4

42 U.S.C. § 2000e(f) ........................................................................................................... 5

42 U.S.C. § 2000e-2(a)(1) .............................................................................................. 4, 5

42 U.S.C. § 2000e-2(a)(2) .................................................................................................. 5

N.Y. Civ. Serv. § 118 ................................................................................................... 2, 10

Title VII of the Civil Rights Act of 1964 .................................... 1, 4, 5, 6, 7, 8, 9, 10, 11

**Rules**

Fed. R. Civ. P. 8(a)(2) ........................................................................................................ 3

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 3

**Other Authorities**

EEOC Compliance Manual, Volume 2: Threshold Issues, Section 2-III(B)(3)(a) [Covered Entities: Third Party Interference with Employment Opportunities] (2000) ................................. 6

EEOC Policy Statement on Control by Third Parties over the Employment Relationship between an Individual and his/her Direct Employer (1987) ............................................ 6, 7

## PRELIMINARY STATEMENT

Plaintiffs, female Nurse Practitioners ("NP"s), bring suit against defendants New York State and New York State Department of Civil Service[1] under Title VII of the Civil Rights Act of 1964. Defendants have maintained a civil service classification that undervalues NPs by locking them into a low salary grade ("SG") that fails to reflect their actual duties, education, and expanding scope of practice. This classification has created a significant pay disparity between NPs, a predominantly female title, and male-dominated titles that perform identical work.

Defendants seek to dismiss plaintiffs' Title VII claims on the grounds that they lack employer-employee relationships with plaintiffs. However, defendants ignore the extensive control New York State exercises over NPs' employment terms and the core duties delegated to the Department of Civil Service, which have directly contributed to inequitable compensation and blocked career advancement opportunities. Plaintiffs respectfully submit this memorandum of law in opposition to defendants' motion to dismiss.

## STATEMENT OF FACTS

Plaintiffs are among the over 200 NPs employed by defendant New York State to deliver medical care in settings such as correctional facilities, hospitals, and health centers throughout the state. Compl. ¶¶ 5-7, 13, 17, 25, 32, 37. At least 80% of state-employed NPs, including plaintiffs, are female. *Id.* ¶ 68. Plaintiffs and the class of NPs they seek to represent diagnose, treat, and prescribe medication for a range of health conditions. *Id.* ¶¶ 9-10, 14, 20, 22, 26, 34, 37. They routinely perform these duties autonomously, exercising final decision-making authority without physician oversight. *Id.* For example, NP plaintiff Amber Hawthorne Lashway served as the sole

---

[1] Plaintiffs' complaint caption incorrectly names the "New York State Civil Service Commission" as a defendant. The correct entity is the "New York State Department of Civil Service," which is accurately used throughout the body of the complaint. For consistency and accuracy, we refer to this defendant as the New York State Department of Civil Service ("Department of Civil Service").

1

medical provider for many years at Upstate Correctional Facility due to a continued lack of physicians. *Id.* ¶ 19-20. These duties are identical to those performed by male-dominated titles like physician and psychiatrist, which enjoy higher SGs of 34 and 38, respectively. *Id.* ¶ 10, 21, 27, 33. In contrast, NPs are classified at SG 24 with no opportunity for career advancement. *Id.* ¶ 40.

Despite more than a decade of efforts by NPs in New York State to secure pay equity, little progress has been made. *Id.* ¶ 39. In 2018, the New York State Legislature directed defendant Department of Civil Service to study the NP classification ("the study"). *Id.* ¶ 43. The Department of Civil Service's Classification and Compensation ("C&C") Division Director exercises delegated authority to classify civil service positions and allocate salary grades. N.Y. Civ. Serv. § 118. After conducting the study, the C&C Director recommended the existing NP classification and the absence of a career ladder were appropriate. *Id.* ¶¶ 49, 58. The study relied on licensure requirements and scope of practice in an attempt to differentiate NPs from titles with higher SGs. *Id.* ¶ 48, 55-57. While it claimed the latter had higher levels of educational and licensure requirements and a broader, more autonomous scope of practice than NPs, the study acknowledged elsewhere that NPs often work without supervision and perform the same duties as physicians. *Id.* ¶ 48-49. Multiple organizations, including the Nurse Practitioner Association and the Public Employees Federation, criticized defendant Department of Civil Service's determination and mischaracterization of NPs as non-independent practitioners. *Id.* ¶¶ 59-61. On November 28, 2018, the C&C Director rebuffed these criticisms and defended the NP classification. *Id.* ¶ 62.

In 2022, the Nurse Practitioner Modernization Act ("NPMA") eliminated the prior physician collaboration requirement, allowing NPs with over 3,600 hours of experience to practice independently without a written agreement. *Id.* ¶ 64. In March 2023, plaintiffs and their representatives met with the C&C Director, seeking an increase in starting SG to 28 with an SG

progression to 34 based on experience and education. *Id.* ¶ 65. To date, defendants have made no changes to the NP classification, maintaining SG 24 and thereby perpetuating discriminatorily low salaries for this female-majority title compared to males in other classifications who perform highly similar functions. *Id.* ¶ 66.

## STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court's inquiry is "context-specific" and "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The pleaded facts must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A complaint does not need "detailed factual allegations," but it must show "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* "The Court accepts as true all of the factual allegations in the complaint and draws inferences from those allegations in the light most favorable to the plaintiff." *See Selevan v. New York Thruway Authority*, 584 F.3d 82, 88 (2d Cir. 2009) (citations omitted); *Jaufman v. Levine*, 2007 U.S. Dist. LEXIS 72883, 13 (N.D.N.Y. Sep. 28, 2007, No. 1:06-CV-1295 [NAM/DRH]).

Where the factual content of the pleading "allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged," the pleading "has facial plausibility." *Ashcroft*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,'" *see id.*, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts [pleaded] is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp*, 550 U.S. at 556 (citations omitted). Indeed, a pleading need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2);

3

*Ashcroft*, 566 U.S. at 678-79. If, accepting all well-pled factual allegations as true, the court finds the complaint "plausibly give[s] rise to an entitlement to relief," *see id.* at 679, it must deny the motion.

**ARGUMENT**

**POINT I       TITLE VII COVERS BOTH NAMED DEFENDANTS**

At its heart, defendants' motion seeks to preclude plaintiffs from gaining relief against the State agency that sets the terms and conditions of their employment and the State that controls the purse strings and is a necessary party to any judgment. Title VII does not brook or tolerate any such result.

As pertinent, Title VII provides: "It shall be an unlawful employment practice for any employer…to fail or refuse to hire or to discharge *any individual*, or otherwise discriminate against *any individual* with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race…" 42 U.S.C. § 2000e-2(a)(1) (emphasis added). The statute defines the term "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person…" *Id.* § 2000e(b).

Defendants argue that the state agencies for whom each plaintiff directly works is her only employer. This argument ignores the fact that, as amply pleaded in the complaint, defendant Department of Civil Service establishes the critical terms and conditions for all plaintiffs' employment, including NP position classification and salary levels, regardless of the state agency where each plaintiff works. Each agency must adhere to these terms and conditions set by the Department of Civil Service, which, in doing so, exercises significant and direct control over plaintiffs' employment. New York State maintains like control by allocating funds to each of its agencies and is responsible for paying judgment in this case.

4

Holding the defendants liable is consistent with Title VII, which applies to the action of an employer but does not specify that said employer is only liable for actions taken against *its own* employees. Indeed, the statute defines, and elsewhere uses, the term "employee," *see* 42 U.S.C. §§ 2000e(f), 2000e-2(a)(2), but the plain text of the operative provision under which plaintiffs sue here does not state that it is unlawful for an employer to discriminate against only *its own* employees, *see id.* § 2000e-2(a)(1). Rather, by its own terms, U.S.C. § 2000e-2(a)(1) prohibits an employer from discriminating against "*any* individual." *Id.* (emphasis added); *See also Sibley Mem. Hosp. v. Wilson*, 488 F.2d 1338, 1341 (D.C. Cir. 1973) ("The Act defines 'employee' as 'an individual employed by an employer,' but nowhere are there words of limitation that restrict references in the Act to 'any individual' as comprehending only an employee of an employer. Nor is there any good reason to confine the meaning of 'any individual' to include only former employees and applicants for employment, in addition to present employees. Those words should, therefore, be given their ordinary meaning so long as that meaning does not conflict with the manifest policy of the Act.").

The facts of this case illustrate the utility in the Congressional scheme. Here, the agency that directly "employs" each plaintiff is not the agency that controls the critical terms and conditions of their employment. Had each plaintiff sued her own agency, the agency could properly defend itself by stating that it had no involvement in establishing the challenged terms and conditions of employment, the relevant classification and attendant salary of NPs. Each "agency employer" simply implements the decisions of the named defendants and has no known discretion to vary from the classification and attendant salary.

Thus, based upon its plain text, the statute should be read to apply to any person satisfying the statutory definition of employer—that is, one that engages in an industry affecting commerce

and employs at least 15 employees—that discriminates, or causes discrimination, against *any individual* with respect to that individual's current or prospective employment.

This interpretation is consistent not only with Title VII's underlying policy—to extirpate employment discrimination from the national economy—but also with EEOC guidance interpreting the statute. Published in 2000, EEOC's guidelines on "threshold issues" explains:

> In addition to prohibiting employers from discriminating against their own employees, Title VII, the ADEA, and the ADA *prohibit a covered third-party employer from discriminatorily interfering with an individual's employment opportunities with another employer*. While the third-party employer might, in some cases, be a joint employer, *the principle described here applies even where an employment relationship has never existed between the third-party employer and the individual*. This kind of liability is commonly known as "third-party interference." The ADA specifically prohibits interference with rights protected under the statute. While Title VII and the ADEA do not include comparable provisions, they prohibit discrimination against "individuals." *Therefore, a charging party need not necessarily be an employee of the employer that is accused of discriminatory interference*.

EEOC Compliance Manual, Volume 2: Threshold Issues, Section 2-III(B)(3)(a) [Covered Entities: Third Party Interference with Employment Opportunities] (2000) (emphasis added), *available online at* https://www.eeoc.gov/laws/guidance/section-2-threshold-issues#2-III-B-2 (last visited Jan. 5, 2023). For further guidance on this subject, the Compliance Manual refers to an earlier Policy Statement on Control by Third Parties over the Employment Relationship between an Individual and his/her Direct Employer ("Policy Statement"). *See Id.*

In that Policy Statement, issued in 1987 under then-Commissioner Clarence Thomas, an avowed textualist, the EEOC opined that "in order for there to be jurisdiction over a third party interferer, the relationship between the individual and his/her direct employer must be one of employment; that is, the individuals must be an employee or prospective employee of the direct employer and not an independent contractor." *See* Policy Statement, available online at,

https://www.eeoc.gov/laws/guidance/policy-statement-control-third-parties-over-employment-relationship-between (last visited Jan. 5, 2024). The EEOC noted: (1) the third party must, itself, be a § 701(b) employer; (2) the individual's direct employer or prospective employer need *not* be a § 701(b) employer; and (3) the control exercised by the third-party interferer must have sufficient nexus to an employment (or prospective employment) relationship. *See Id.*

As to the third element, the EEOC expressed its view "that a sufficient nexus will exist where the third party has the ability to thwart the creation or continuance of a direct employment relationship or **where it has the ability to affect the terms, conditions, or privileges of employment.**" *Id.* (emphasis added). This is precisely the situation here. Providing specific instances where courts have found a sufficient nexus, the EEOC cited *Vanguard Justice Socy. v. Hughes*, 471 F. Supp. 670, 696-97 (D. Md. 1979) (control over design or administration of exams constitutes sufficient nexus to hold third party liable as "employer" under Title VII) and *Gill v. Monroe County Dept. of Social Servs.*, 79 F.R.D. 316, 334 (W.D.N.Y. 1978) (state civil service department may be liable for claims by county employees, where it exercised exclusive control over examinations, thus "control[ling] access to the plaintiffs' job market").

This interpretation is also consistent with the Second Circuit's decision in *Spirt v. Teachers Ins. & Annuity Ass'n.*, 691 F.2d 1054, 1063 (2d Cir. 1982), which held Title VII applies to companies administering plaintiffs' life insurance plans even though they were not plaintiffs' employers and explaining, "it is generally recognized that the term employer as used in Title VII is sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities, regardless of whether that party may technically be described as an employer of an aggrieved individual as that term has generally been defined at common law."

Here, following Title VII's plain text as interpreted by the EEOC, and consistent with *Spirt*, whether or not it directly employs plaintiffs, neither defendant can dispute that it is an employer of its *own* employees under Title VII, and so it may be held liable if it interferes in the existing or prospective employment relationship of *any* individual on the basis of gender. The complaint alleges that it has done just that, by knowingly and intentionally misclassifying NPs, ensuring their underpayment, on account of their gender.

Plaintiffs also note that while "the existence of an employer-employee relationship is a primary element of Title VII claims," *Gulino v. NY State Educ. Dept.*, 460 F.3d 361, 370 (2d Cir. 2006), "in certain circumstances," an employee may "assert employer liability against an entity that is *not formally* his or her employer." *Shiflett v. Scores Holding Co.*, 601 F. Appx. 28, 30 (2d Cir. 2015) (quoting *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 197 [2d Cir. 2005]) (emphasis added). Courts have recognized two doctrines to establish such employer-employee relationships: the "single employer" doctrine and the "joint employer" doctrine. *Id.*

In this case, the joint employer doctrine applies. Under this doctrine, an entity other than an employee's formal employer may be liable where it "handles certain aspects of [an] employer-employee relationship jointly." *Arculeo*, 425 F.3d at 198. As the Second Circuit recently held, this relationship is established "when two or more entities, according to common law principles, share significant control of the same employee." *Felder v. United States Tennis Ass'n*, 27 F. 4th 834, 843 (2d Cir. 2022). Specifically, such control exists when "an entity other than the employee's formal employer has power to pay an employee's salary, hire, fire, or otherwise control the employee's daily employment activities." *Id.* at 844.

Here, plaintiffs plausibly allege they "work for the defendant State of New York as Nurse Practitioners." Compl. ¶ 1. Defendant New York State exerts significant control over plaintiffs'

8

employment as NPs through its enforcement of a civil service classification that governs their compensation and career progression and its payment to each plaintiff of the salary so set . *Id.* ¶ 5. This control is evidenced by several factors, as plaintiffs have set forth: first, defendants, <u>not</u> the respective and different agencies for which plaintiffs work, ultimately determine classification and SG allocations for NPs. Second, NPs are treated as a single job title, determined at the state level, regardless of their specific work location. Third, while plaintiffs work at various facilities throughout the state, they are uniformly subject to defendants' classification and SG determinations. Thus, defendants' centralized and substantial control over NP classification and salary grade allocation directly and adversely affects core aspects of plaintiffs' employment conditions, including pay and career progression. In light of the nature and degree of control, defendants are joint employers, and plaintiffs' Title VII claim against defendants should not be dismissed.

**POINT II    DEFENDANT DEPARTMENT OF CIVIL SERVICE'S DELEGATED AUTHORITY OVER CORE DUTIES AFFECTING PLAINTIFFS' EMPLOYMENT CREATES LIABILITY UNDER THIRD-PARTY INTERFERENCE THEORY**

As mentioned in Point I, *supra*, Title VII claims require an employer-employee relationship. *See Gulino*, 460 F.3d at 361. Starting in *Sibley Mem. Hosp. v. Wilson*, 488 F.2d 1338 (D.C. Cir. 1973), third-party interference theory has extended Title VII liability "not only [to] employers in the traditional sense, but also [to] those who interfere with an individual's access to employment opportunities." *Gulino*, 460 F.3d 361 at 373-374. The Second Court has recognized a limited interference theory, in which a "third party can incur liability under Title VII" if "an employer has delegated one of its core duties" to it (e.g., the administration of a retirement plan) (discussing *Spirt v. Teachers Ins. & Annuity Ass'n.*, 691 F.2d 1054 [2d Cir. 1982]). *Id.* at 337.

9

Here, defendant Department of Civil Service affirmatively interferes in NPs' employment by exercising its delegated core duties. As the central personnel agency for the Executive Branch of New York State, it exerts broad authority over a range of employment-related matters. *See* https://www.cs.ny.gov/home/agency.overview.cfm (last visited Dec. 6, 2024).[2] Specifically, it "[p]artners with State agencies to offer workforce recruitment and placement services, including developing minimum qualifications, **classifying positions**, developing civil service examinations, and administering performance assessment tests; [a]dministers the New York State Health Insurance Program...; [and] [a]ssists municipal agencies with civil service administration." *Id. See also* N.Y. Civ. Serv. § 118. These delegated responsibilities constitute third-party interference and provide the requisite conditions for an employer-employee relationship.

Defendant Department of Civil Service's interference with plaintiffs' employment opportunities is clearly demonstrated through its actions regarding the NP classification. Compl. ¶ 43. In 2018, following legislative direction, the Department of Civil Service conducted a study of the NP classification, ultimately recommending against a reallocation of NPs' salary grade and the creation of a career ladder. *Id.* As a result, NPs remain locked at SG 24 with "a discriminatorily low salary" compared with males in titles with higher SGs but who perform the same duties. *Id.* ¶ 66. Defendant Department of Civil Service "continues to intentionally understate the job functions of NPs, overstate their dependence on clinical physicians and advocate for the maintenance of their current inequitable job classification." *Id.* ¶ 67.

While defendants contend that plaintiffs failed to demonstrate an employer-employee relationship, citing *Alameda v. Ass'n. of Social Work Bds.*, 2024 U.S. Dist. LEXIS 175886

---

[2] The Court may take judicial notice of "matters of public record," including information retrieved from an agency's official website. *Singleton v. Fifth Generation, Inc.*, 2016 U.S. Dist. LEXIS 14000, 2-3 (N.D.N.Y. Jan. 12, 2016, No. 5:15-CV-474 [BKS/TWD]).

10

(S.D.N.Y. Sep. 25, 2024, No. 23-CV-6156 [KMK]), factual differences between this case and *Alameda* render defendants' reliance on *Alameda* misplaced. In *Alameda*, the district court dismissed Title VII claims against defendant Association of Social Work Boards ("ASWB") where, the court held, plaintiffs, African American and Hispanic test-takers who failed a licensing exam administered by ASWB, did not allege any delegation of core employer responsibilities. *Id.* at 10. In contrast, here, defendant Department of Civil Service is directly involved in NPs' employment through its classification and salary grade determinations. This delegated control over core employment functions distinguishes this case from *Alameda*.

For these reasons, plaintiffs' Title VII claim against defendant Department of Civil Service should not be dismissed.

## CONCLUSION

Defendants exercise centralized control over NP classifications and salary grades across state facilities, functioning as joint employers with the specific state agency for which each plaintiff and purported class members works. Through its delegated authority over these and other core employment duties, defendant Department of Civil Service directly interferes with NPs' employment conditions. By maintaining an NP classification at a lower salary grade than male healthcare providers who perform comparable work, defendants perpetuate the systematic undervaluation of this predominantly female healthcare profession. Defendants' motion to dismiss should be denied for the aforementioned reasons.

Dated: December 10, 2024

Respectfully Submitted,

Michael H. Sussman, Esq. [103324]

*Attorney for Plaintiffs*
Sussman & Goldman
1 Railroad Avenue, Suite 3
P.O. Box 1005
Goshen, New York 10924
(845) 294-3991 [Tel]
(845) 294-1623 [Fax]
Sussman1@sussman.law