UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

RACHEL BURNS, ALLISON GERMAN, AMBER HAWTHORNE LASHWAY, MARIE NEPTUNE, SUSAN DEVLIN-VARIN & KIMBERLY WESLEY, on their own behalves and on behalf of all similarly situated Nurse Practitioners employed by the State of New York,

                     Plaintiffs,

              - against -

STATE OF NEW YORK, NEW YORK STATE CIVIL SERVICE COMMISSION,

                     Defendants.

------------------------------------------------------------------ X

5:24-CV-1132 (BKS/ML)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6).**

LETITIA JAMES
Attorney General of the State of New York
*Attorney for Defendants*
300 S. State Street, Ste. 300
Syracuse, New York 13202
Aimee Cowan
Assistant Attorney General, of Counsel
Bar Roll No. 516178

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

ARGUMENT…………………………………………………………………………………...1

**POINT I:    PLAINTIFF'S TITLE VII CLAIMS AGAINST THE STATE OF NEW YORK SHOULD BE DISMISSED…………………………………………...1**

    A.  The Second Circuit has rejected plaintiffs' "third-party interference" theory……….1

    B.  Plaintiffs have not plausibly pled that the State is their joint employer……………...1

**POINT II:   PLAINTIFFS' TITLE VII CLAIM AGAINST THE NEW YORK STATE CIVIL SERVICE COMMISSION SHOULD BE DISMISSED………………5**

CONCLUSION……………………………………………………………………………………7

## TABLE OF AUTHORITIES

**CASES**

Alameda v. Ass'n of Soc. Work Boards, No. 23-CV-6156 (KMK), 2024 WL 4302389 (S.D.N.Y. Sept. 25, 2024)……………………………………………………………....1, 2

Felder v. United States Tennis Ass'n, 27 F.4th 834 (2d Cir. 2022)……………………………….5

Gulino v. New York State Educ. Dep't, 460 F.3d 361 (2d Cir. 2006)…………………………2, 3

Kern v. City of Rochester, 93 F.3d 38 (2d Cir. 1996)……………………………………………..7

Lopez v. Massachusetts, 588 F.3d 69 (1st Cir. 2009)…………………………………………….3

Pasha v. New York State Dep't of Health, No. 22-CV-3355 (ER), 2024 WL 4240769 (S.D.N.Y. Sept. 19, 2024)…………………………………………………………………………4

Popat v. Levy, No. 15-CV-01052 EAW, 2024 WL 3652947 (W.D.N.Y. Aug. 5, 2024)…………3

Shah v. Deaconess Hosp., 355 F.3d 496 (6th Cir. 2004)………………………………………….3

Sibley Mem. Hosp. v. Wilson, 488 F.2d 1338 (D.C. Cir. 1973)………………………….1, 2, 3, 4

Smith v. Castaways Family Diner, 453 F.3d 971 (7th Cir. 2006)…………………………………3

Spirt v. Teachers Ins. & Annuity Ass'n, 691 F.2d 1054 (2d Cir. 1982)……………………..2, 3, 7

**STATUTES**

N.Y. Civ. Serv. § 117……………………………………………………………………………...6

N.Y. Civ. Serv. § 118……………………………………………………………………………...6

N.Y. Civ. Serv. § 120(2)…………………………………………………………………………..6

N.Y. Civ. Serv. §130(5)(b)………………………………………………………………………..6

U.S.C. § 2000e-2(a)(l)…………………………………………………………………………….1

U.S.C. § 2000e-2(a)-(c)…………………………………………………………………………...3

U.S.C. § 2000e(b)-(d)……………………………………………………………………………..3

Title VII of the Civil Rights Act of 1964……………………………………………1, 2, 3, 5, 6, 7

**ARGUMENT**

**POINT I:   PLAINTIFF'S TITLE VII CLAIMS AGAINST THE STATE OF NEW YORK SHOULD BE DISMISSED**

**A. The Second Circuit has rejected plaintiffs' "third-party interference" theory.**

The State of New York ("the State") is not a proper party to plaintiffs' Title VII discrimination claims and should be dismissed because plaintiffs' complaint has failed to allege sufficient facts to suggest an employment relationship between the State and the plaintiffs. Plaintiffs' brief in opposition to defendants' motion to dismiss ("plaintiffs' brief") attempts to sidestep the numerous previously decided cases where courts have held that the State is not a proper defendant in Title VII actions brought by employees of a state agency. See e.g. ECF No. 11-1 at 12-13. Instead, plaintiffs' brief offers no such binding authority to the contrary and instead contends that the State can be held liable under a "third party interference" theory, as plaintiffs similarly argued in Alameda v. Ass'n of Soc. Work Boards, No. 23-CV-6156 (KMK), 2024 WL 4302389, at *3 (S.D.N.Y. Sept. 25, 2024)[1]. See ECF No. 13 at 8-13.

Plaintiffs' brief cites Sibley Mem. Hosp. v. Wilson, 488 F.2d 1338, 1341 (D.C. Cir. 1973), contending that "the plain text of the operative provision under which plaintiffs sue here does not state that it is unlawful for an employer to discriminate against only *its own* employees, see id. § 2000e-2(a)(1). Rather, by its own terms, U.S.C. § 2000e-2(a)(l) prohibits an employer from discriminating against *"any* individual." Id. (emphasis added). ECF No 13 at 9. Plaintiff further cites to the EEOC Compliance Manual, Volume 2—specifically, a section titled "Third Party Interference with Employment Opportunities," Id. at 10, purportedly arguing that plaintiffs' complaint alleges a sufficient nexus between the State and its control over plaintiffs' employment.

---

[1] The plaintiffs in both the instant matter and in Alameda are represented by the same law firm.

1

Citing Spirt v. Teachers Ins. & Annuity Ass'n, 691 F.2d 1054, 063 (2d Cir. 1982), plaintiffs contend that the State cannot dispute that it is an employer under Title VII and can be liable for interfering in the existing or prospective employment relationship of *any* individual on the basis of gender. ECF No. 13 at 11-12.

However, plaintiffs' brief neglects to mention that the Second Circuit has harshly criticized Sibley and has expressly declined to recognize the "third party interference" theory. See Gulino v. New York State Educ. Dep't, 460 F.3d 361, 370 (2d Cir. 2006). In Gulino, school district employees sued a state agency under Title VII, alleging that the rights of African American and Latino teachers were violated by imposing a requirement that they pass a test to receive or retain a teaching license. 460 F.3d at 364. The Second Circuit held that the plaintiffs had no Title VII claim against the state agency for administering allegedly discriminatory tests because "plaintiffs' direct employer had not delegated any core employer responsibilities to the agency that administered the test." See id. at 378. The Second Circuit acknowledged that "this Circuit has never adopted a broad reading of the Sibley interference test." Id. at 374. Further, the Court declined to apply the Sibley Court's "expansive approach to interpreting the straightforward language of the statute," holding that the interference theory of liability "contravenes the plain language of Title VII and strays from basic tents of statutory interpretation." Id.

As plaintiffs argued in Alameda, plaintiffs argue here that because Title VII does not specify that an employer is only liable for actions taken against its own employees, then liability attaches whenever an employer discriminates against any individual. ECF No. 13 at 9-10. This Court should reject plaintiffs' argument that the Court should adopt a broad reading of the Sibley interference test, as the Court so rejected in Alameda and Gulino. See Alameda, 2024 WL 4302389 at *3 (citing Gulino, 460 F.3d at 377). Indeed, such an interpretation "ignores the very language

2

that Congress employed." Gulino, 460 F.3d at 375. Pursuant to 42 U.S.C. § 2000e(b)-(d) and § 2000e-2(a)-(c), labor unions and employment agencies are the only additional parties that are potentially liable under Title VII. The Second Circuit noted in Gulino that "Congress obviously considered a range of potentially liable parties apart from traditional common-law employers, and in so doing, decided that only these two additional groups would be included." Id. "[A]ll other parties with a similar 'nexus' to a plaintiff's employment are excluded from the Title VII liability scheme." Id.

Additionally, the Second Circuit's decision in Spirt, supra, does not diminish the Gulino holding because, as the Second Circuit noted in Gulino, the Spirt holding was narrow in scope and other United States Supreme Court and Second Circuit rulings demonstrated that "a broad application of the interference test is plainly inconsistent with traditional principles of agency law." Gulino, 460 F.3d at 377-378; see also Popat v. Levy, No. 15-CV-01052 EAW, 2024 WL 3652947, at *17 (W.D.N.Y. Aug. 5, 2024) ("[t]he interference liability theory, although not necessarily foreclosed, is fairly circumscribed in this Circuit.). Consequently, this Court should decline to adopt a broad reading of the Sibley third-party interference theory and follow the Second Circuit's reasoning in Gulino –as other Circuits have similarly done. See Lopez v. Massachusetts, 588 F.3d 69, 89 (1st Cir. 2009); Smith v. Castaways Family Diner, 453 F.3d 971, 975-76 (7th Cir. 2006); Shah v. Deaconess Hosp., 355 F.3d 496, 499-500 (6th Cir. 2004).

Even if the Court were to consider plaintiffs' third-party interference theory with respect to the State, it would not apply to the facts of this case. To be sure, in Sibley, the defendant hospital directly coordinated plaintiff's hiring by hospital patients through the hospital's registry and referral system. 488 F.2d at 1339. The decision to extend Title VII liability to the hospital was based on this specific arrangement, which also included the hospital's control of the premises upon

3

which the plaintiff's services were to be rendered and its ability to block plaintiff's access to patients attempting to hire him. Id. at 1342. The Court held that given this scenario, the hospital was alleged to have "intruded itself between the patient and appellee." Id. However, there is no such intrusion by the State here. As the Gulino court recognized, where the employer—in this case, the agencies for which each plaintiffs works—controls its own day-to-day operations and makes its own employment decisions, the Sibley test is not triggered. 460 F.3d at 376. This was true even where a defendant state agency set certain minimum requirements for local schools, such as curriculum standards, graduation requirements, and minimum licensure requirements for teachers. Id. at 374. Here, plaintiffs' complaint does not allege that the State has any direct involvement in the day-to-day operations of any prior, current or prospective employees. Consequently, even if the Second Circuit recognized the third-party interference theory from Sibley, it would not apply here.

**B. Plaintiffs have not plausibly pled that the State is their joint employer.**

Plaintiffs' brief argues in the alternative that the "joint employer" doctrine applies to the State because the State exerts "significant control" over plaintiffs' employment as Nurse Practitioners. ECF No. 13 at 12-13. However, nowhere in plaintiffs' complaint do they allege that the State itself asserts any control over them, let alone "significant" control. For example, the complaint fails to allege that the State—rather than the State agency who employs them—has the right to hire or fire them, may assign plaintiff(s) additional projects, exerts any control over when and how long they must work, exerts any control over the location at which they work, or decides what days they are required to work. Plaintiffs' complaint simply does not establish that the State exercises the kind of control that would be necessary to establish a joint employment relationship. See e.g. Pasha v. New York State Dep't of Health, No. 22-CV-3355 (ER), 2024 WL 4240769, at

4

*5 (S.D.N.Y. Sept. 19, 2024) (significant control exists where "an entity other than the employee's formal employer has power to pay an employee's salary, hire, fire, or otherwise control the employee's daily employment activities.") (citing Felder v. United States Tennis Ass'n, 27 F.4th 834, 844 (2d Cir. 2022)). Again, plaintiffs fail to acknowledge the numerous previously decided cases where courts have held that the State is not a proper defendant in Title VII actions brought by employees of a state agency, and they do not assert any binding authority to the contrary. See ECF No. 11-1 at 12-13.

**POINT II:    PLAINTIFFS' TITLE VII CLAIM AGAINST THE NEW YORK STATE CIVIL SERVICE COMMISSION SHOULD BE DISMISSED**

Plaintiffs reiterate their "third-party interference" theory of liability with respect to extending Title VII liability to the New York State Civil Service Commission ("NYSCSC"). ECF No. 13 at 13-15. For the reasons stated under Point I(A), supra, this Court should reject this theory and decline to apply it to the NYSCSC.

Plaintiffs further contend that the NYSCSC can be held liable under Title VII pursuant to a "limited interference" theory because the NYSCSC has been delegated control over "core employment functions." ECF No. 13 at 13-15.  As an initial matter, plaintiffs acknowledge in their brief that the complaint's caption incorrectly names the "New York State Civil Service Commission" as a defendant and acknowledges that the correct entity is the "New York State Department of Civil Service." ECF No. 13 at 5, fn. 1.  Plaintiffs' inability to identify the correct entity in the caption undermines their contention that the NYSCSC "interfered" to the extent that Title VII liability must attach.

Regardless, as mentioned in defendants' original memorandum of law, the NYSCSC itself maintains oversight authority for state and local governments as a quasi-legislative authority, appellate authority and investigative authority to ensure the proper administration of the Civil

5

Service Law. See N.Y. Civ. Serv. §§ 120(2), 130(5)(b). NYSCSC's Division of Classification and Compensation ("C&C") classifies positions by examining the duties of all the positions in State service in conjunction with the assistance of State agencies, to group positions with similar occupational fields and job duties together by job title. See N.Y. Civ. Serv. §§ 117, 118. The Director of C&C is responsible for ascertaining and recording the duties and responsibilities of positions in the classified service of the State, classifying such positions, and allocating salary grades for competitive, non-competitive and (within their discretion) labor class positions. N.Y. Civ. Serv. § 118. The NYSCSC retains review over the Director of C&C's salary determinations in its separate appellate capacity, but is not an "employer."

Plaintiffs' complaint does not allege that the NYSCSC hired them, has the ability to fire them, exerts control over the location of their work, pays their salaries, supervises their work or the conditions of their employment at their respective agencies, or maintains daily attendance records or job performance records. Further, plaintiffs' complaint does not allege that they have received any payment or benefits from the NYSCSC for work they performed for it, that the NYSCSC is allowed to assign plaintiffs additional work or has any discretion over when and how long plaintiffs work, or that the NYSCSC exerts any other control over plaintiffs' daily employment activities.

The Second Circuit held in Gulino that the Spirt decision "enunciated a narrow rule based upon a unique factual posture: we held that, where an employer has delegated one of its core duties to a third party—in that case, Long Island University delegated responsibility for the administration of a retirement plan to TIAA—that third party can incur liability under Title VII." 460 F.3d at 377. The Second Circuit also noted in Spirt that the finding of an employment relationship between the companies and the plaintiff was supported by the fact that the plaintiff's

participation in the retirement program was mandatory and that LIU shared in the administrative responsibilities of the retirement program. See Kern v. City of Rochester, 93 F.3d 38, 45 (2d Cir. 1996) (citing Spirt, 691 F.2d at 1063)). Plaintiffs have not cited any authority that supports a limited interference theory based on the unique factual posture in this case, nor does the complaint allege that plaintiffs' employers—the agencies for whom they work—delegated any employment responsibilities to the NYSCSC itself. For these reasons, plaintiffs' Title VII claims against the NYSCSC should be dismissed.

## **CONCLUSION**

Defendants respectfully request that the Court dismiss plaintiffs' complaint in its entirety, with prejudice, and grant such other and further relief as it deems just and equitable.

| | |
|---|---|
| Dated: Syracuse, New York<br>December 23, 2024 | LETITIA JAMES<br>Attorney General of the State of New York<br>*Attorney for Defendants*<br>300 S. State Street, Ste. 300<br>Syracuse, New York 13202<br>By: ____/s_____<br>Aimee Cowan<br>Assistant Attorney General, of Counsel<br>Bar Roll No. 516178<br>Telephone: (315) 448-4800<br>Fax: (315) 448-4853<br>Email: aimee.cowan@ag.ny.gov |

# **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on December 23, 2024, she filed Defendants' reply memorandum of law by electronically filing with the Clerk of the Court herein, using the CM/ECF system, which is understood to have sent notification of such filing electronically to the following:

Michael H. Sussman, Esq.
SUSSMAN & GOLDMAN
PO Box 1005
Goshen, New York 10924

Dated: Syracuse, New York
December 23, 2024

LETITIA JAMES
Attorney General of the State of New York
Attorney for Defendants
300 S. State Street, Suite 300
Syracuse, New York 13202
By: ____/s_____
Aimee Cowan, Esq.
Assistant Attorney General
Bar Roll No. 516178
Telephone: (315) 448-4800
Fax: (315) 448-4853
Email: aimee.cowan@ag.ny.gov