UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RACHEL BURNS, ALLISON GERMAN, AMBER
HAWTHORNE LASHWAY, MARIE NEPTUNE,
SUSAN DEVLIN-VARIN & KIMBERLY WESLEY, each           5:24-cv-01132 (BKS/ML)
on their own behalf and on behalf of all similarly situated
Nurse Practitioners employed by the State of New York,

                                Plaintiffs,

v.

STATE OF NEW YORK and NEW YORK STATE CIVIL
SERVICE COMMISSION,

                                Defendants.
_____

**Appearances:**

*For Plaintiffs:*
Michael H. Sussman
Sussman & Goldman
1 Railroad Avenue, Suite 3
P.O. Box 1005
Goshen, New York 10924

*For Defendants:*
Letitia James
Attorney General of the State of New York
Aimee Cowan
Assistant Attorney General
300 S. State Street, Suite 300
Syracuse, New York 13202

**Hon. Brenda K. Sannes, Chief United States District Judge:**

MEMORANDUM-DECISION AND ORDER

**I.     INTRODUCTION**

Plaintiffs Rachel Burn, Allison German, Amber Hawthorne Lashway, Marie Neptune,

Susan Devlin-Varin and Kimberly Wesley, nurse practitioners, filed this class action complaint

against Defendants State of New York and the New York State Civil Service Commission,[1] alleging gender bias and wage discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5 et seq. (Dkt. No. 1). Presently before the Court is Defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 11). The motion is fully briefed. (Dkt. Nos. 13, 16). For the reasons that follow, Defendants' motion is granted and the complaint is dismissed.

## II.     FACTS[2]

### A.     The Parties

"Plaintiffs . . . all work for the defendant State of New York as nurse practitioners." (Dkt. No. 1, ¶ 1). Plaintiff Rachel Burns works as a psychiatric mental health nurse practitioner for the Western New York Office for Persons with Developmental Disabilities. (*Id.* ¶¶ 7, 9). Burns "is responsible for performing comprehensive psychiatric evaluation for patients, diagnosis, prescribing medication, ordering labs, and determining risk." (*Id.* ¶ 9). "These evaluations are identical and require [Burns] to complete the same forms." (*Id.*). Burns's "duties are in alignment of a psychiatrist" and she "routinely engages in crises intervention and uses evidence-based practices to properly treat her patients autonomously." (*Id.* ¶ 10). Burns is a "SG24"[3] "with no opportunity for advancement." (*Id.*). A psychiatrist is a "SG38." (*Id.*). Burns has a bachelor's

---

[1] There is a New York State Department of Civil Service and the New York State Civil Service Commission.  N.Y. Civ. Serv. § 5[1], [2]. Defendants assert that the "State agency is actually titled the New York State Department of Civil Service," and that the Commission is a "legally separate entity," but does not object to the Commission as a named Defendant. (Dkt. No. 11-1, at 5 n.1).

[2] The facts are drawn from Plaintiffs' complaint. (Dkt. No. 1). The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

[3] The complaint does not define "SG" or "SG24" but elsewhere the complaint refers to "Grade 24" and "Grade 36" employees. (Dkt. No. 1, ¶ 21). The Court infers this is a reference to a civil service classification, but the complaint offers no explanation of what the different levels mean or the benefits they carry. However, the Court infers based on the complaint's references to compensation, (*see id.* ¶¶ 51, 66), that Grade 24 carries a lower salary than Grade 36.

degree in nursing ("BSN"), a master's degree in nursing ("MSN"), and a doctorate in nursing practice ("DNP"). (*Id.* ¶8).

Plaintiff Allison German, an NP, "had worked at SUNY Oswego . . . Walker Health Services" since 2005. (*Id.* ¶ 13). German practices "completely independent of physician oversight and provides primary and acute care, including physical examinations, diagnosing, and treating illnesses/injuries, prescribing medications, and ordering and reviewing diagnostic tests." (*Id.* ¶ 14). "German also oversees and supervises two registered nurses, a licensed practical nurse and one medical assistant." (*Id.* ¶ 15). German has a Primary Care NP Certificate and a Master of Science degree in family nursing and community health nursing. (*Id.* ¶ 12).

Plaintiff Amber Hawthorne Lashway "works as an NP at Upstate Correctional Facility." (*Id.* ¶ 17). Upstate Correctional Facility "has no physicians" and "[f]or many years . . . Lashway was the sole medical provider, acting completely independently of any physician oversight with final decision-making authority over healthcare matters affecting incarcerated individuals." (*Id.* ¶ 19). "As regular components of her job duties, plaintiff Lashway meets with incarcerated persons, diagnoses and treats their medical conditions, managing illnesses like hypertension, diabetes, asthma, COPD and HIV," and "provides treatment for persons diagnosed with opioid use disorder." (*Id.* ¶¶ 22–23). Lashway's duties mirror those performed by Grade 36 clinical physicians but Lashway is a Grade 24. (*Id.* ¶ 21). Lashway has a BSN and a Master of Science in Family Nurse Practitioner. (*Id.* ¶ 18).

Plaintiff Marie Neptune is an NP at the NYS Office of Mental Health ("OMH") at Pilgrim Psychiatric Center. (*Id.* ¶ 25). "Neptune is responsible for conducting comprehensive psychiatric reviews of patients upon their admission, diagnosis, determining risk, creating and implementing treatment plans, prescribing medications, and ordering and referring patients to

3

consultants, as needed." (*Id.* ¶ 26). "These evaluations are identical to what a psychiatrist completes." (*Id.* ¶ 27). "In OMH, the psychiatric nurse practitioners are identified in the medical record as the 'psychiatrist' of record." (*Id.* ¶ 28). "Neptune is a Grade 24 doing work typically performed by, in her case, a psychiatrist (Grade 38)" and "has no opportunity for advancement." (*Id.* ¶¶ 29–30). Neptune is a Psychiatric-Mental Health Nurse Practitioner, Board Certified and has BSN, MSN and DNP degrees. (*Id.* ¶ 25).

Plaintiff Susan Devlin-Varin is an NP at Clinton Correctional Facility. (*Id.* ¶ 32). Devlin-Varin provides "primary, acute, and long-term care to incarcerated persons, including diagnosing their health problems, prescribing medications, medical tests, and treatment, collaborating with other health care professionals, and providing clinical guidance and training nursing staff." (*Id.* ¶ 34). "Devlin-Varin performs the same functions as a Clinical Physician in the Department of Correctional Services and Supervision but receives much less pay." (*Id.* ¶ 33).

Plaintiff Kimberly Wesley is an NP at Rochester Psychiatric Center, where she conducts physical examinations, orders, performs, and interprets diagnostic tests and procedures, diagnoses, treats a variety of medical conditions, discusses advanced directives with patients and their families, completes evaluations for other staff, and regularly attends departmental and hospital committee meetings. (*Id.* ¶ 37). These are "the same duties as [Wesley's] clinical physician colleagues." (*Id.*). Wesley has a BSN, an "NP degree," and "maintains board certification." (*Id.* ¶¶ 36, 38).

B.   **Civil Service Classification of NPs**

Defendant New York State Civil Service Commission "is the agency of the State of New York responsible for the classification of civil service employees." (Dkt. No. 1, ¶ 3). "In 2006, defendants re-classified NPs from Grade 18 to Grade 24." (*Id.* ¶ 42). NPs "are classified at Grade 24 with no possibility of internal advancement or steps associated with their title." (*Id.* ¶ 40). In

2018, the New York State Civil Service Commission's "Compensation and Classification unit did a 'study' of the NP classification, recommending against re-grading and a career ladder." (*Id.* ¶ 43). "The study noted the subordinate role of NPs to physicians . . . and the substantial difference between physician classification (entry at 34) and that of NPs (24), psychologists (25) and pharmacists (25)." (*Id.* ¶ 44). The study "focused on the 'scope of practice' as decisive, contrasting Licensed Social Worker and Physician Assistant Titles which have less autonomy in treating patients than do NPs." (*Id.* ¶ 45). "The study claimed that higher classified positions have higher levels of educational attainment [as measured by years] and licensure requirements and no supervision or collaboration requirement [as NPs allegedly do]." (*Id.* ¶ 48). However, elsewhere, the study reported that NPs, "as utilized by defendant State, often work without actual supervision, and as substitutes for physicians." (*Id.* ¶ 49). The "study also addressed compensation issues and noted a very recent change [GPD] implemented 'to address significant retention and recruitment issues' due to what it acknowledged to be uncompetitive prior salaries."[4] (*Id.* ¶ 52).

### III.    STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" are insufficient; rather, a plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). The Court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in favor

---

[4] The complaint does not indicate what "GPD" stands for.

of the plaintiff." *E.E.O.C. v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). Additionally, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV. DISCUSSION

Defendants State of New York and the New York State Civil Service Commission move for dismissal on the ground that the complaint fails to allege that they are Plaintiffs' employers or joint employers under Title VII. (Dkt. No. 11-1, at 9–17). Plaintiffs oppose dismissal arguing that New York State and the Commission are their employers within the meaning of Title VII and that the Commission is a proper defendant under a third-party interference theory of liability. (Dkt. No. 13, at 8–13).

### A. Title VII Employer or Joint Employer

Title VII makes it "an unlawful employment practice for *an employer* . . . to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a) (emphasis added). To be held liable for employment discrimination under the Title VII, a defendant must have been the plaintiff's "employer." 42 U.S.C. § 2000e (b); *see Heller v. Consol. Rail Corp.*, 331 F. App'x 766, 768 (2d Cir. 2009) (summary order) (noting that Title VII "appl[ies] only to discriminatory practices by an employer"). And "[i]t has long been understood [in the Second Circuit] that 'the existence of an employer-employee relationship is a primary element of Title VII claims.'" *Felder v. United States Tennis Ass'n*, 27 F.4th 834, 838 (2d Cir. 2022) (quoting *Gulino v. N.Y.S. Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006)). "The plausible existence of a requisite employer-employee relationship is thus a cornerstone of an adequately pled Title VII complaint." *Id.*

of the plaintiff." *E.E.O.C. v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). Additionally, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV. DISCUSSION

Defendants State of New York and the New York State Civil Service Commission move for dismissal on the ground that the complaint fails to allege that they are Plaintiffs' employers or joint employers under Title VII. (Dkt. No. 11-1, at 9–17). Plaintiffs oppose dismissal arguing that New York State and the Commission are their employers within the meaning of Title VII and that the Commission is a proper defendant under a third-party interference theory of liability. (Dkt. No. 13, at 8–13).

### A. Title VII Employer or Joint Employer

Title VII makes it "an unlawful employment practice for *an employer* . . . to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a) (emphasis added). To be held liable for employment discrimination under the Title VII, a defendant must have been the plaintiff's "employer." 42 U.S.C. § 2000e (b); *see Heller v. Consol. Rail Corp.*, 331 F. App'x 766, 768 (2d Cir. 2009) (summary order) (noting that Title VII "appl[ies] only to discriminatory practices by an employer"). And "[i]t has long been understood [in the Second Circuit] that 'the existence of an employer-employee relationship is a primary element of Title VII claims.'" *Felder v. United States Tennis Ass'n*, 27 F.4th 834, 838 (2d Cir. 2022) (quoting *Gulino v. N.Y.S. Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006)). "The plausible existence of a requisite employer-employee relationship is thus a cornerstone of an adequately pled Title VII complaint." *Id.*

To begin, the Court notes that Plaintiffs broadly argue that Title VII "should be read to apply to any person satisfying the statutory definition of employer—that is, one that engages in an industry affecting commerce and employes at least 15 employees"[5] and contend that any entity satisfying that definition, "may be held liable if it interferes" in the "employment relationship of any individual on the basis of gender." (Dkt. No. 13, at 11–12); *see also* 42 U.S.C. § 2000e(b). However, following the Supreme Court's lead, the Second Circuit has instructed courts to look to the common law of agency for the "meaning of 'employer' and 'employee,'" rather than "the circular definitions provided in Title VII," when considering whether a plaintiff has sufficiently alleged an employment relationship under Title VII. *Felder*, 27 F.4th at 843 (observing that "in determining Congress's intended meaning of the terms 'employer' and 'employee' in statutes mirroring the circular definitions provided in Title VII, the Supreme Court has 'relied on the general common law of agency" (quoting *Comm. for Creative Non-Violence v. Reid*, 490 U.S. 730, 740 (1989)). Accordingly, the Court finds Plaintiff's initial argument unavailing and turns to the "set of non-exhaustive factors set forth by the Supreme Court, that, when present, may indicate the existence of an employer-employee relationship under the common law." *Id.* (citing *United States v. City of New York*, 359 F.3d 83, 92 (2d Cir. 2004)). "These factors include:

> [T]he hiring party's right to control the manner and means by which the product is accomplished . . . [;] the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in the business; the

---

[5] Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person." 42 U.S.C. § 2000e(b).

>provision of employee benefits; and the tax treatment of the hired party."

*Id.* (quoting *Comm. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751–52 (1989)). "[T]he crux of these factors is 'the element of control.'" *Id.* (quoting *Gulino*, 460 F.3d at 371).

The Second Circuit has also recognized that an entity may be considered a "joint employer" for purposes of liability under Title VII. *Id.* "[A] joint employer relationship [exists] when two or more entities, according to common law principles, share significant control of the same employee," which "means that an entity other than the employee's formal employer has power to pay an employee's salary, hire, fire, or otherwise control the employee's daily employment activities, such that [the Court] may properly conclude that a constructive employer-employee relationship exists." *Id.* at 843–44.

Importantly, as relevant here, courts within the Second Circuit have utilized these principles in determining whether plaintiffs have adequately alleged New York State defendants are employers for purposes for liability under Title VII. *See, e.g.*, *Gulino*, 460 F.3d at 379 (applying common law of agency in determining whether the New York State Education Department was employer of educators in New York City public school system); *Penz v. Washer*, No. 18-cv-4964, 2019 WL 1922040, at *2, 2019 U.S. Dist. LEXIS 72526, at *5 (S.D.N.Y. Apr. 30, 2019) (looking to "traditional indicators of employment under the common law of agency" in determining whether the plaintiff, who worked as a correction officer for the New York State Department of Corrections and Community Supervision, adequately alleged the State of New York was an employer for purposes of liability under Title VII (quoting *Gulino*, 460 F.3d at 379)); *Harris v. New York*, No. 20-cv-8827, 2022 WL 445776, at *1, *3, 2022 U.S. Dist. LEXIS 26260, at *1, 7–8  (S.D.N.Y. Feb. 14, 2022) (applying common law of agency principles in concluding the plaintiff, who worked in the Office of New York State

Comptroller's Office of Unclaimed Funds, failed to allege employment relationship with the State of New York under Title VII).

In this case, the complaint alleges that Plaintiffs "all work for the defendant State of New York as Nurse Practitioners," (Dkt. No. 1, ¶ 1), but also identifies the New York State agencies where the individual Plaintiffs work, including the Western New York Office for Persons with Developmental Disabilities, (*id.* ¶ 7), SUNY Oswego's Walker Health Services, (*id.* ¶ 13), Upstate Correctional Facility, (*id.* ¶ 17), the New York State Office of Mental Health at Pilgrim Psychiatric Center, (*id.* ¶ 25), Clinton Correctional Facility, (*id.* ¶ 32); and the Rochester Psychiatric Center, (*id.* ¶ 37). The complaint does not allege any facts regarding what entity "paid [the employees'] salaries, hired and fired them, and had control over their daily employment activities." *Felder*, 27 F.4th at 843 (quoting *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 214 (3d Cir. 2015)). Although it is plausible to infer from the complaint that the State of New York and New York State Civil Service Commission establish the pay grade for nurse practitioners (Grade 24), there are no facts suggesting that either Defendant otherwise has any control over Plaintiffs' employment. *See Penz*, 2019 WL 1922040, at *2, 2019 U.S. Dist. LEXIS 72526, at *5–6 (finding the plaintiff failed to allege that the State of New York was her employer where she alleged that the State "acting through one of its departments, DOCCS, employs Plaintiff" but provided "no facts to support this conclusory assertion, including, for instance, whether the State hired plaintiff, paid her wages, or—most importantly—exercised direct, obvious, and concrete control over plaintiff's day-to-day activities"); *see also Waterman v. N. Collins Emergency Squad, Inc.*, No. 18-cv-706, 2022 WL 3701581, at *4, 2022 U.S. Dist. LEXIS 137446, at *10 (W.D.N.Y. Aug. 2, 2022) (finding that the plaintiff "failed to allege he [was] an employee for purposes of Title VII, the ADA, and NYSHRL" where he not only

"fail[ed] to allege he [was] an employee of NCES, but [he] also fail[ed] to allege he received any benefits, either directly as salary, or indirectly as remuneration"), *report and recommendation adopted* 2022 WL 3701198, 2022 U.S. Dist. LEXIS 154221 (W.D.N.Y. Aug. 26, 2022); *Stinnett v. Delta Air Lines, Inc.*, 278 F. Supp. 3d 599, 610–11, 613 (E.D.N.Y. 2017) (finding that a defendant was not the plaintiff's employer for purposes of Title VII and the ADA where the plaintiff failed to allege that the defendant could "fire, assign, or supervise [the] [p]laintiff"). Thus, Plaintiffs fail to allege that either Defendant is a direct or formal employer.

Nor does the complaint allege facts that would allow a plausible inference that the State of New York or the New York Civil Service Commission were Plaintiffs' joint employers. As discussed above "[r]elevant factors include commonality of hiring, firing, discipline, pay, insurance, records, and supervision." *Vitti v. Macy's Inc.*, 758 F. App'x 153, 156 (2d Cir. 2018) (summary order) (citing *NLRB v. Solid Waste Servs., Inc.*, 38 F.3d 93, 94 (2d Cir. 1994)). However, "sparse, conclusory allegations are insufficient to . . . permit the Court to examine . . . the commonality of control required for joint employer liability." *Couch v. New York Daily News Co.*, No. 19-cv-5903, 2021 WL 7448476 at *11, 2021 U.S. Dist. LEXIS 256458, at *27–28 (E.D.N.Y. Mar. 23, 2021) (citations omitted). Here, nothing in the complaint permits an inference that any Defendant, or even the agencies Plaintiff work for, are Plaintiffs' formal employers. Further, there are no facts alleged in the complaint indicating that any Defendant had significant control over Plaintiffs as employees, such as the ability to hire, fire, train, promote, or supervise. *See Felder*, 27 F.4th at 843–44; *see also Klinkowitz v. Jamaica Hosp. Med. Ctr.*, No. 20-cv-4440, 2022 WL 818943, at *7, 2022 U.S. Dist. LEXIS 49594, at *17–18 (E.D.N.Y. Mar. 17, 2022) (dismissing the plaintiff's Title VII claim because his "conclusory allegations [were] inadequate to support an inference that [one of the defendants] was a joint employer with [her

10

formal employer]" because they failed to "in any way establish control over an employee's hiring, firing, training, promotion, discipline, supervision, and handling of records, insurance, and payroll" (internal quotation marks and citation omitted)). Accordingly, the Court concludes that the complaint fails to allege that the State of New York or the New York State Civil Service Commission are Plaintiffs' employers or joint employers under Title VII.[6]

### B.   Third-Party Interference

Plaintiffs argue that even if the complaint fails to allege an employment relationship between Plaintiffs and the New York State Civil Service Commission, the Commission may nevertheless be liable under the "third-party interference" or "limited interference" theory. (Dkt. No. 13, at 13 (referring to *Spirit v. Teachers Ins. & Ann. Ass'n*, 691 F.2d 1054 (2d Cir. 1982), *vacated and remanded on other grounds*, 463 U.S. 1223 (1983))). Plaintiffs contend that the Commission "interferes in [Plaintiffs'] employment by exercising its delegated core duties"—classifying nurse practitioner positions as Grade 24 positions. (Dkt. No. 13, at 14). In reply, Defendants note that in the "the *Spirit* decision," the Second Circuit "enunciated a narrow rule based on a unique factual posture,'" and that the complaint, in any event, fails to allege who Plaintiffs' employers are or that Plaintiffs' employers "delegated any employment responsibilities to the Commission." (Dkt. No. 16, at 9–10 (quoting *Gulino*, 460 F.3d at 377)). The Court agrees with Defendants.

---

[6] In their memorandum, Defendants assert that the State of New York "maintains . . . control by allocating funds to each of its agencies and is responsible for paying judgment in this case," that Defendants, not the agencies for which Plaintiffs work, "ultimately determine classifications and SG allocations for NPs," "NPs are treated as a single job title, determined at the state level, regardless of their specific work location." (Dkt. No. 13, at 8, 13). However, none of these facts are alleged in the Complaint. Thus, the Court has not considered them in connection with the present motion. In any event, none of these allegations would cure a fundamental omission in this case: the absence of factual allegations identifying Plaintiffs' formal or direct employer.

11

In *Spirit*, the Second Circuit "enunciated a narrow rule based upon a unique factual posture: [it] held that, where an employer has delegated one of its core duties to a third party—in that case, Long Island University delegated responsibility for the administration of a retirement plan to TIAA—that third party can incur liability under Title VII." *Gulino*, 460 F.3d at 377. Thus, courts have explained the "*Spirit* test," as a theory of liability pursuant to which "an entity can be liable for an employment claim where the plaintiff's direct employer 'has delegated one of its core duties' to the entity." *Bieber v. Cayuga Cap. Mgmt., LLC*, No. 21-cv-5268, 2022 WL 22916786, at *8, 2022 U.S. Dist. LEXIS 255723, at *22 (E.D.N.Y. Dec. 2, 2022) (quoting *Spirit*, 691 F.2d at 1058); *see also Gulino*, 460 F.3d at 377.

Here, even assuming establishing grade and classification for nurse practitioners is a "core duty," the complaint does not identify Plaintiffs' "direct employers" or allege that their employer delegated grade and classification duties to Defendant New York State Civil Service Commission. *See Popat v. Levy*, 253 F. Supp. 3d 527, 539 (W.D.N.Y. 2017) (finding the plaintiff did "not plausibly allege" "that any 'core employer responsibility,' has been delegated . . . by one of the parties with which he has a clear direct employment relationship (the University or Kaleida)" to corporation associated with the University") (internal citation omitted) (citing *Gulino*, 460 F.3d at 378). Indeed, other than alleging that the Commission sets grade and classification for nurse practitioners, the complaint offers no facts showing that the State of New York, or the state agencies where each Plaintiff worked, delegated "core duties" to the New York State Civil Service Commission. *See Bieber*, 2022 WL 22916786, at *8, 2022 U.S. Dist. LEXIS 255723, at *23 (finding the plaintiff failed to allege the defendant was liable under *Spirit* test for an employment claim under the False Claims Act where the plaintiff made "no allegation that any duties were 'delegated'" to the defendant, avoided "identifying his direct employer that

12

would have done the delegating, and failed to allege the other entity he sued, "delegated any duties to" the defendant); *see also Shehab v. New York State Dep't of Transp.*, 251 F. App'x 9, 10 (2d Cir. 2007) (finding allegation that the Department of Transportation reviewed the plaintiff's " eligibility for the training program" was "insufficient to establish an employment relationship" under Title VII, explaining that "'interference' with employment is 'irrelevant if the [Department] does not satisfy the common-law agency test for employer liability'" (quoting *Gulino*, 460 F.3d at 379 n.21)). Thus, the Court finds Plaintiffs have failed to allege their employer delegated a core duty to Defendant New York State Civil Service Commission.

Accordingly, Defendants' motion to dismiss is granted.[7]

## V. CONCLUSION

For these reasons, it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that the complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk is directed to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

Dated: <u>August 1, 2025</u>
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

---

[7] As Plaintiffs have not sought leave to amend the complaint, or articulated a viable basis for amendment, the Court does not address that issue.

13